Matter of Brown v Plans Plus Ltd. (2024 NY Slip Op 05006)

Matter of Brown v Plans Plus Ltd.

2024 NY Slip Op 05006

Decided on October 10, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 10, 2024

CV-23-0250
[*1]In the Matter of the Claim of Janice Brown, Appellant,
v
Plans Plus Ltd. et al., Respondents. Workers' Compensation Board, Respondent.

Calendar Date:September 10, 2024

Before:Egan Jr., J.P., Pritzker, Lynch, McShan and Powers, JJ.

Grey & Grey, LLP, Farmingdale (Sanjai Doobay of counsel), for appellant.
David F. Wertheim, State Insurance Fund, Albany (Susan B. Marris of counsel), for Plans Plus Ltd. and another, respondents.

Lynch, J.
Appeal from a decision of the Workers' Compensation Board, filed January 11, 2023, which denied claimant's request for an extreme hardship redetermination pursuant to Workers' Compensation Law § 35 (3).
In 2010, claimant was injured in a work-related accident while working as an enrollment specialist performing data entry and telephone services at her desk, when she bent forward in her chair and fell to the floor, sustaining back injuries. In 2014, claimant was classified with a permanent partial disability and an 80% loss of wage earning capacity, entitling her to 425 weeks of indemnity benefits (see Workers' Compensation Law § 15 [3] [w] [v]). In December 2020, prior to the expiration of her indemnity benefits, claimant filed an extreme hardship redetermination request (C-35 form) pursuant to Workers' Compensation Law § 35 (3) seeking reclassification to permanent total disability, which the employer and its workers' compensation carrier opposed. Following a hearing at which claimant testified, a Workers' Compensation Law Judge denied claimant's request finding that she had not shown extreme financial hardship. Upon administrative appeal, the Workers' Compensation Board affirmed. Claimant appeals.
Claimant contends that the Board misinterpreted the statutory meaning of the phrase "extreme hardship" in denying her request. Prior to 2007, "a permanently partially disabled worker was able to receive benefits for life"; the 2007 comprehensive legislative reforms of the Workers' Compensation Law (see L 2007, ch 6) "capped the number of weeks that a person is eligible to receive benefits for a non-schedule permanent partial disability" (Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d 1184, 1185 [3d Dept 2021] [internal quotation marks and citations omitted]). "However, the 2007 legislative reforms also included the enactment of Workers' Compensation Law § 35, which is intended to create a possible safety net for claimants who sustain a permanent partial disability and have not returned to work after they have reached their limit on weeks of indemnity payments" (Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1185 [internal quotation marks and citations omitted]). Pursuant to Workers' Compensation Law § 35 (3), "[i]n cases where the loss of wage-earning capacity is greater than [75%], a claimant may request, within the year prior to the scheduled exhaustion of indemnity benefits under [Workers' Compensation Law § 15 (3) (w)], that the [B]oard reclassify the claimant to permanent total disability or total industrial disability due to factors reflecting extreme hardship."
"Extreme hardship is not defined in the statute but, according to the legislative history, this provision was intended to provide an exemption for claimants under extreme financial hardship" (Matter of Davis v Hutchings Children Servs., 213 AD3d 1111, 1112 [3d Dept 2023], lv denied 40 NY3d 902 [2023] [internal quotation marks, brackets and citations omitted; emphasis [*2]added]; see Matter of Vicente v Finger Lakes DDSO, 209 AD3d 1073, 1073 [3d Dept 2022]; Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1185). We have upheld as rational the Board's interpretation, in reliance on dictionary definitions, that a "claimant [seeking reclassification based upon extreme hardship] must demonstrate financial hardship beyond the ordinary and existing in a very high degree" (Matter of Davis v Hutchings Children Servs., 213 AD3d at 1112 [internal quotation marks omitted]). Here, the Board considered claimant's assets and monthly income and expenses in concluding that she did not demonstrate extreme financial hardship. The Board noted that claimant did not have any unusual or unexpected expenses for a person on a fixed income and that, under the specific circumstances presented, the fact that her monthly expenses exceeded her income by approximately $300 did not, by itself, constitute an extreme hardship. We discern no error in the Board's interpretation or application of the extreme hardship statutory standard, which is consistent with this Court's decisions.
Addressing the merits of claimant's application, the Board's determination as to whether she demonstrated the requisite extreme hardship warranting a reclassification to permanent total disability "will not be disturbed if supported by substantial evidence" (Matter of Davis v Hutchings Children Servs., 213 AD3d at 1113). "In evaluating applications for the exception, the Board considers the claimant's assets, monthly household income and monthly expenses" (Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1186 [internal quotation marks, brackets and citations omitted]) and "any other relevant factor" (Matter of Vicente v Finger Lakes DDSO, 209 AD3d at 1074; see Workers' Compensation Board Release Subject No. 046-938 [Apr. 26, 2017]). Claimant argues that her C-35 form and testimony — documenting her monthly income, including social security and a pension, and monthly living expenses — reflect that, once her workers' compensation benefits are exhausted, her expenses will exceed her income by about $300. However, claimant's testimony established that she lives alone in a three-bedroom house on which she took a $150,000 equity loan prior to this work accident, the proceeds of which were not accounted for, and leases a luxury vehicle costing $477 per month. Likewise, no documentation was provided detailing the expenses underlying her monthly credit card payment of $300 to $400. During cross-examination, claimant also acknowledged that her monthly social security payment increased approximately $70 per month, effective December 2021. On these facts, as the Board's determination is supported by substantial evidence, it will not be disturbed (see Matter of Davis v Hutchings Children Servs., 213 AD3d at 1114; Matter of Phillips v Milbrook Distrib. Servs., 199 AD3d at 1186).
Egan Jr., J.P., Pritzker, McShan and Powers, JJ., concur.
ORDERED that the decision [*3]is affirmed, without costs.